IN RE APPEAL OF JAMES F. JORDAN AS RECEIVER OF KOLLITZ, INC.
FIRST NATIONAL BANK OF ORTONVILLE, RESPONDENT.[1]

July 25, 1930.

No. 27,877.

[1]Reported in 231 N. W. 801.

*Dodge & Jackman,* for appellant.

*F. L. & E. V. Cliff,* for respondent.

WILSON, C. J.

The appeal is from an order allowing the bank's claim.

C. W. Kollitz and H. W. Kollitz were copartners as the Ortonville Mercantile Company. In 1924 they were financially distressed and made an assignment to W. A. Marin as trustee. In February, 1925, certain creditors, namely, First National Bank of Ortonville, Ortonville State Bank, Griggs, Cooper & Company, and Wyman, Partridge & Company, desiring to secure more than prospective dividends, entered into a written contract wherein they agreed to a plan to buy the assets at $17,000. They were inventoried at $36,800. Pursuant to the provisions of the contract, "Kollitz, Inc." was organized. Its capital stock to the extent of $36,800 was issued to Ed. H. Kollitz, a brother of the original debtors. He transferred to Kollitz, Inc. the assets which had been transferred to him by the trustee. Each of the four creditors applied their dividends from the estate toward the payment of the purchase price of the assets. Ed. H. Kollitz then gave his personal notes to each of the four creditors, representing the full amount of their unpaid claims against the Ortonville Mercantile Company as follows:

| | |
|---|---|
| First National Bank | $ 7,100.00 |
| Ortonville State Bank | 1,500.00 |
| Griggs, Cooper & Company | 11,013.16 |
| Wyman, Partridge & Company | 10,114.45 |

These notes were long-time instalment notes. Ed. H. Kollitz transferred the said capital stock of Kollitz, Inc. to John Michell, James A. Vaughan and W. E. Dunlap, as trustees, to secure the payment of said notes. All of this was done in accordance with said contract, and the parties contemplated that dividends from the new corporation would be used to pay off these notes. The contract also provided that in default of the payment of said notes the trustees had the power and authority to liquidate said business and apply the proceeds pro rata to the said indebtedness. Divi-

dends have been paid. The claims of these creditors have been substantially reduced. The balance unpaid to the First National Bank is now $3,300 and is evidenced by three notes for $1,000, $800, and $1,500, respectively.

C. W. Kollitz and H. W. Kollitz have at all times been in charge of the business of Kollitz, Inc. and it was the understanding that when the said four creditors should have received the amount due them upon their said indebtedness, that Kollitz, Inc. and its business would belong to C. W. Kollitz and H. W. Kollitz. Ed. H. Kollitz had no interest therein and was engaged in business at Odessa. Some time after the consummation of the reorganization and when the claimants' notes were renewed, the renewals were signed by Kollitz, Inc. per C. W. Kollitz. Kollitz, Inc. is now in the hands of the receiver who has appealed from the allowance of the bank's claim.

Ed. H. Kollitz had no interest in the transaction. He was not a party to the written contract, though he is mentioned therein. It provides for his doing the things which he has done. He was not identified with the business of the corporation. He apparently executed the notes and accepted and transferred the assets of the partnership and the capital stock of the corporation as an accommodation to the interested parties. He got nothing. The claim is that the notes were without consideration and that they represented the personal indebtedness of Ed. H. Kollitz. All the parties understood that Ed. H. Kollitz assumed no obligation; it was also understood that the four creditors were to be paid out of the earnings and assets of the corporation; and that thereupon the business was to be owned by C. W. Kollitz and H. W. Kollitz. In fact, the corporation paid about 35 per cent of the original amount of the indebtedness to these creditors, including the bank. It apparently recognized its liability to the bank before these particular notes were given. Perhaps its liability existed prior to its executing the notes, and they were given in recognition of a liability resting in the general understanding of all the parties incident to the creation of Kollitz, Inc.

The claim on the part of the bank is that Kollitz, Inc. was the real debtor, that it was created for the very purpose of taking the assets of the copartnership and attempting to work out profits enough to pay these four creditors who had financed its reorganization. On the contrary, the receiver claims that the corporation and its assets were in fact owned by these four creditors, including the bank, and that the bank had no right to receive, and Kollitz, Inc. had no right to give, the notes, and that as to the corporation giving the notes, they were without consideration. Such was the issue in the case. There was evidence to sustain a finding either way. The court found in favor of the bank.

Affirmed.

STONE, J. (dissenting).

To me it seems that respondent's claim is not for money advanced to, or for any benefit conferred upon, the corporation but only for the balance of a debt (for which the corporation is not liable) made up of two items—(1) respondent's $7,100 claim against the original partnership, and (2) the $17,000 advanced under its contract (exhibit B, p. 9, of the record) with the other creditors "for the reorganization of the Kollitz Mercantile Company, a partnership * * * into and as a corporation under the name of Kollitz, Incorporated." Under that contract, both the original claim and the new money advanced went, not to the new corporation but to purchase the merchandise, accounts receivable, and other property of the old business for the purpose of turning the same over to Ed. H. Kollitz to enable him, as the agent of the contracting parties, "to subscribe and pay for stock" in the new corporation "to the amount of the inventoried value of said property ($36,800.00) * * * to be paid for by transfer of the property aforesaid."

The transaction was carried out accordingly, and the stock of the new corporation issued to Ed. H. Kollitz as the agent or trustee for the four contracting creditors, of whom respondent was one. (The evidence that Ed. H. Kollitz did make the subscription for 368 shares as contemplated by the contract is found at folios 120-3

of the record.) True, notes were given to them in an amount equal to the balances due on their original claims—in case of the respondent, its original claim plus its $17,000 new advance. But as to the new corporation, these notes evidenced no loan or other debt due from it but only what the payees had subscribed and paid for its capital stock. In consequence, the notes as to the corporation were without consideration and void. They were in law a fraud on its real creditors, who dealt with it on the faith of its capital stock.

If the theory of the decision below is correct, Kollitz, Inc. issued its stock for nothing and when organized was nearly, if not quite, insolvent. For its entire property, inventoried at $36,800, it issued stock of that par value and simultaneously incurred debts in the same amount. That would be an impossible situation, and it is not to be supposed that the parties intended the violation of law which would be the necessary result.

I cannot concur in a decision which assumes that any such thing was intended, or that if it was we can or should give it effect. Respondent, in my judgment, can claim only as a stockholder and not as a creditor, without prejudice of course to whatever claims it might have against the other contracting parties under the agreement pursuant to which the $17,000 was advanced.

